My name is Allison Wittner. I'm here on behalf of Appellant Unigem International. We're prepared to submit on our moving papers unless the Justices have any questions. You didn't come here to argue? Why didn't you let us know beforehand? I'm prepared to argue if the courts have – if the Justices have any questions. Well, I don't, so. If you don't want to argue, it's all right with me. Thank you. Good morning, Your Honors. Before I start, I'd just like to introduce my co-counsel, Parima Pandku. She's not going to argue, but she did help me, so she's here today. May it please the Court. I believe that the district court's order is a correct one, and it was – I think that Judge Wilson basically got it right. He gave a very thoughtful analysis of the facts and applied the correct law. He looked at this primarily as a – or essentially a business dispute over valuation of goods sent from Israel – or sent to Israel. And he was very aware of all the cases cited by the appellant, and he went to great lengths to distinguish the main one that they relied on, which is the Dole case. I believe his decision concluding that jurisdiction would not lie in this case was correct. However, since Your Honors have the option of looking at this case de novo, I would like to make six very brief points for – to bring to your attention. If I disagree with anything in the trial court's decision, it's the issue of purposeful availment. Now, there were two aspects to these transactions, the old setup and the facts that gave rise to this lawsuit. Under the old setup, a company in California, Unigem, always ordered diamonds from Israel. They were sent from Israel to California, and they were paid for with promissory notes that were mailed back to Israel for discounting to Israeli banks. Unigem has an office here, but SWS, the Weinstein Diamond Company, had no presence in California. They never solicited business in California, and they never basically were here. So I don't believe that there was purposeful availment under even the old setup, certainly not under the new setup. Kennedy. Well, we're making contracts here. Well, the contracts actually were orders that were sent to Israel. So I don't – there was – I mean – How did this business arrangement begin? The original business arrangement is probably more than 20 years old, and it always stemmed from an order being sent to Israel for diamonds produced in Israel and sent back to California. Right, okay. But that was the usual course of the transaction. But at the very beginning, how did Unigem know to contact Weinstein to place an order? I mean, how did they – was there – you don't know the history? There's nothing in the record about that. But, I mean, Israel is a major diamond center, and, you know, I can't assume it, but I suppose they just met them at some diamond exchange, probably in Tel Aviv. But there's no evidence in the record that the Weinsteins ever solicited business in California. I guess that's where I'm going. Right, nothing in the record about that, and no presence whatsoever. Now, the particular deal that we're talking about here, I draw a line between what was and what happened here. Everything ended. The Weinsteins sent their last shipment to Unigem, and they got paid by promissory notes. Then, after some time passes, Unigem contacts SWS in Israel and says, you've got to help us out. Now, again, no solicitation whatsoever, because SWS had already been paid by these notes. The deal was over, finished. And they get contacted in Israel and say, please help us. So, again, no pointing, no aiming, no nothing towards California. And basically all they tried to do was help Unigem pay off its own debts to these various banks. It's a totally different scenario from the previous situation. That's point number one. I don't believe that there was this purposeful availment. Point number two is that the declaration of Joseph Leiser, which the appellants rely on, is incompetent. He did not have personal knowledge of the facts that he basically testified to in his declaration. He says that the President and the person who ran the business was a man named Richard Utko, U-D-K-O, and that he was an employee-slash-consultant to Unigem and the major shareholder in the company. But he doesn't say what he really did. And Judge Wilson was troubled by this because he stated in his opinion, in his order, that his relationship with Unigem, Leiser's relationship, was, quote, not entirely clear, end quote. Now, all Mr. Leiser does is say after the fact, after everything has happened, I looked at the records and this is what they said was shift. That's not competent testimony. He had no personal knowledge of what was shift. The only person that could have made that declaration was Richard Utko, and we don't have a declaration from him. Furthermore, he can't really testify as to what the arrangement was between Unigem and SWS because he doesn't know. We objected to that declaration as part of our moving papers. The third point, the parties clearly intended to arbitrate this case. And I would point to a letter that Mr. Leiser wrote to the Israel Diamonds Exchange, which states, and I'm quoting, On behalf of Unigem and Fininvest, which was the company that he owned, I request arbitration of the dispute with S. Weinstein, Benjamin Shavit, and Ari Weinstein. I mean, I don't know how much clearer it could be that he wanted to arbitrate this case. The Weinstein company joined into that arbitration, said, yes, we're ready. We have claims of our own. And the Israel Diamond Exchange confirmed that there is a mutual arbitration now pending as of April 2002. Do we have anything? I have to go outside the record. Do we know now how that arbitration is proceeding or is it on hold? It's still just sitting there. Everybody, they're waiting for it. They have invited the Unigem to come and participate, and they haven't come. Now, one of the reasons that they haven't come is that Mr. Leiser stated in his declaration that he heard from some unknown source that you can't get a fair hearing in Israel, not in the arbitration and not in the court system. I don't believe that's a competent statement. I don't think it's true, but I also don't think it's competent. And he just said somebody told him this. So that's the reason he's not proceeding. But he should proceed. Both parties wanted to do this, and everybody in the diamond business knows that's how these disputes are resolved. Now, the ‑‑ And where are the diamonds? The diamonds that weren't sold are in Israel. They're still there. And as a matter of fact, a representative of Unigem traveled there, I think it was Utko, to look at them and evaluate them himself. That's where all the experts are in the diamond field. That's where the brokers are who sold the diamonds that were sold. And that's where the banks are that bought these notes. So the only party that's in California is Unigem, just one person, basically, and the company records. Everything else is over there. Is it possible for a person not a member of the diamond club to get to invoke arbitration? No, but Mr. Leiser wrote in his letter, he wrote one letter to the West Coast Diamond Club and one to the Israel Diamond Club bragging about the fact that he's a member, and he was one of the founding members of the one in Los Angeles. And the rules are that individuals are members, but they represent whatever company they work with. So you have to be a member, but he's definitely a member, and he's proud of it. He wrote it several times. The next point is the unreasonableness. I think we've been through this. We're dealing with some very elderly people in Israel who basically would have a hard time coming here to try this case. And all the witnesses and all the goods and everything are in Israel. And finally, I would just like to say that in the end, it was the Weinstein Company, SWS, that was the injured party here. As a result of these failures of Unigem, they lost a factory. They had to sell their factory, and they lost their line of credit with the banks. And so they had every reason to help Unigem try to sell these diamonds. And they wrote to the- Of course, that's the merits of the matter. That's the merits of the case. Yes, I totally agree. Yes. But, I mean, they were the big losers here. And just by way of reminder, it wasn't raised in the appellant's brief, but the individual defendants don't belong in this case. And it wasn't even they didn't even address the issue. So I don't think that there's any jurisdiction over them whatsoever. And just by last reminder, the courts have stated over and over that the barrier  Thank you. Thank you, counsel. The case of Unigem v. Weinstein & Sons will be submitted. And we will take up U.S. v. Lenior. Thank you. Thank you.
judges: Hug, Tg Nelson, Wardlaw